143 F.3d 1185
 98 Cal. Daily Op. Serv. 3411, 98 Daily Journal
D.A.R. 4780,
98 Daily Journal D.A.R. 5866
UNITED STATES of America, Plaintiff-Appellee,
v.
Lyndon Lloyd GRAVES, Defendant-Appellant.
 No. 97-10202.
 United States Court of Appeals,
Ninth Circuit.
 Argued and Submitted Feb. 9, 1998.
Decided May 5, 1998.
As Amended June 4, 1998.
 
 Susan Raffanti, Oakland, California, for appellant Lyndon Lloyd Graves.
 Jonathan Schmidt, Assistant United States Attorney, San Francisco, California, for the appellee.
 Appeal from the United States District Court for the Northern District of California; William H. Orrick, Jr., District Judge, Presiding. D.C. No. CR-95-0427-WHO.
 Before: D.W. NELSON, REINHARDT, and WIGGINS, Circuit Judges.
 REINHARDT, Circuit Judge:
 
 
 1
 This case requires us to construe the federal statute governing the offense of accessory after the fact; in doing so, we contrast its provisions with those contained in conspiracy and aiding and abetting statutes. See 18 U.S.C. §§ 2(a), 3, & 371. We must decide in particular whether the crime of being an accessory after the fact to a felon in possession of a firearm requires that the defendant have knowledge not only that the person who committed the primary offense ("the offender") possessed a gun (which may ordinarily be perfectly legal), but also that he was a felon (which renders the possession illegal under federal law). 18 U.S.C. § 922(g)(1).
 
 
 2
 Because the accessory after the fact statute specifically requires that the defendant have acted with knowledge that "an offense against the United States has been committed," we conclude that the government must prove beyond a reasonable doubt that the accessory was aware that the offender had engaged in conduct that satisfies the essential elements of the primary federal offense. To put it more precisely, the accessory must know that the offender had engaged in the conduct that constitutes the federal offense--though not necessarily that such conduct constitutes a federal offense. Therefore, in the case before us, the government was required to prove that the defendant knew not only that the offender possessed a firearm, but also that he had previously been convicted of a felony.[1]
 
 Background
 
 3
 The facts are generally undisputed. On the night of September 9, 1995, Lyndon Lloyd Graves accompanied his friend Shawn Prince to a party at an apartment on Treasure Island Naval Base in San Francisco, California. Upon their arrival, Prince entered the apartment and immediately began yelling at his girlfriend, trying to convince her to go home with him. During the argument, Prince brandished a gun. Although Graves attempted to persuade his friend to leave the party, he was unsuccessful in his efforts, and went outside to wait in his truck.
 
 
 4
 Soon thereafter, naval security officers arrived, handcuffed Prince, and placed him in the backseat of a police cruiser. The security officers searched Prince, but did not find the gun that he had used. While the officers were busy taking witness statements, Graves got out of his truck and, aided by a remarkable display of law enforcement negligence, opened the door of the cruiser and helped Prince escape. According to a neighbor who observed the events, Prince and Graves ran down the street into a nearby cul-de-sac, where Graves threw a rag-like object into a trash can. Based on the neighbor's report, naval security officers located the trash can and retrieved a Smith and Wesson .357 magnum revolver.
 
 
 5
 At some point the same night, Prince and Graves returned to the apartment and were arrested. Both were taken to the naval security station house and each received citations for carrying a loaded weapon in a public place, drawing and exhibiting a weapon in a rude or threatening manner, and possession of a deadly weapon. Because Prince used an alias, the security officers did not discover that he had a prior felony conviction. Both men were immediately released from custody. Once Prince's status as a felon came to light, however, he was charged with being a felon in possession of a firearm. Several weeks after Prince was indicted, and after he had failed to surrender pursuant to notice of the issuance of a federal arrest warrant, an FBI agent observed Graves driving a car with Prince in the passenger seat. The agent activated his lights and siren, and after a slow, mile-long chase, Graves pulled over. Graves and Prince were both taken into custody.
 
 
 6
 In a superseding indictment, Graves was charged with being an accessory after the fact to Prince in connection with the felon in possession offense, in violation of 18 U.S.C. § 3, and with aiding and abetting Prince's escape, in violation of 18 U.S.C. §§ 2 & 751. Graves and Prince were tried jointly. At the close of the government's case, Graves moved for judgment of acquittal as to the accessory after the fact count. Graves contended that there was insufficient evidence to support a conviction on this count because the government had "not introduced one shred of evidence that Mr. Graves knew that Shawn Prince was a convicted felon." The district court denied Graves's motion. Likewise, although Graves requested an instruction that would have required the jury to find that he knew that Prince "had committed the crime of felon in possession of a firearm," the district court accepted instead the government's proposed instruction, which only required the jury to find that Graves knew that Prince "had committed the crime of unlawful possession of a firearm."
 
 
 7
 After several hours of deliberation, the jury delivered a note posing the question: "[M]ust we find that Graves knew that Prince had a prior felony conviction ... ?" The district court responded: "No." Graves was convicted on both counts, and sentenced to a 27-month term of imprisonment, to be followed by a two-year term of supervised release. He appeals only the conviction on the accessory after the fact count.
 
 Discussion
 
 8
 The principal issue Graves raises on appeal concerns the knowledge requirement under the federal accessory after the fact statute. Graves contends that the statute requires the government to prove that he had knowledge with respect to the essential elements of Prince's crime in order to show that he acted to aid Prince "knowing that an offense against the United States has been committed." Accordingly, argues Graves, in order to convict him of being an accessory with respect to Prince's crime of felon in possession, the government was required to prove that he knew that: 1) Prince had possessed a weapon, and 2) Prince had previously been convicted of a felony. The government asserts initially that it was sufficient to show that Graves knew that Prince had possessed the gun and alternatively that it was sufficient to show that he knew Prince had possessed the gun "unlawfully."
 
 
 9
 For several reasons, we are persuaded that Graves's reading of the statute is correct, and that, because the prosecution presented no evidence to suggest that Graves knew of Prince's prior felony conviction, there was insufficient evidence to support his conviction.
 
 I.
 
 10
 As with any question of statutory construction, we look first to the statute itself. It provides in relevant part:
 
 
 11
 Whoever, knowing that an offense against the United States has been committed, receives, relieves, comforts or assists the offender in order to hinder or prevent his apprehension, trial or punishment, is an accessory after the fact.
 
 
 12
 18 U.S.C. § 3 (emphasis added). Because it is clear that the statute contains a knowledge requirement, the question is what, precisely, the defendant must know in order to "know[ ] that an offense against the United States has been committed." Obviously, the defendant must know at least some facts regarding the offender and the primary offense. Only when he has knowledge of the offense can he be guilty of comforting or assisting the offender in order to hinder his apprehension or trial.
 
 
 13
 In this case, there is no dispute that the government had to prove that Graves knew that Prince possessed a gun. The government contends, however, that Graves was required to know nothing more. Its basic position is that knowledge of Prince's felon status was unnecessary. Alternatively, the government argues, the only additional fact of which Graves was required to be aware was that Prince's possession of the gun was "unlawful"--that is, contrary to some municipal, state, or federal regulation or statute. Graves replies that under the accessory after the fact statute, he not only must have known that the possession was unlawful, but he also must have been aware of facts that made the possession a violation of federal law--and specifically, in this case, because the primary offense is felon in possession of a firearm, that Prince had been previously convicted of a crime that constitutes a felony.[2]
 
 
 14
 The government argues in essence that the accessory after the fact statute does not require that the accessory have independent knowledge of the elements of the "offense against the United States." Rather, the government maintains, the knowledge requirement for an accessory is simply derivative of the mens rea requirement for the offender to whom the accessory has provided comfort or assistance. According to the government, because a person charged with being a felon in possession of a firearm is not required to know of his own felon status, an accessory who comforts or assists that person following his commission of the crime need not know that fact either. See United States v. Miller, 105 F.3d 552, 555 (9th Cir.), cert. denied, --- U.S. ----, 118 S.Ct. 186, 139 L.Ed.2d 125 (1997) ("We agree with the decisions from other circuits that the § 924(a) knowledge requirement applies [for a person charged with being a felon in possession] only to the possession element of § 922(g)(1), not to the interstate nexus or to felon status."). That seems to us to be an odd concept, because the offender may understandably be presumed to have knowledge that he has previously been convicted of a felony, while there is no reason to presume that an individual comforting or assisting the offender after he has committed an unrelated offense, perhaps years afterwards, would know of the earlier conviction.
 
 
 15
 More forcefully, the government maintains that the law governing accessories after the fact should be the same as the law governing aiders, abettors, and conspirators; and, because aiders, abettors, and conspirators do not need to be aware of the principal's status as a felon, accessories do not need to be aware that the offender had previously been convicted of a felony. See United States v. Canon, 993 F.2d 1439, 1442 (9th Cir.1993) (holding that an aider and abettor to the crime of felon in possession of a firearm does not need to be aware of the principal's status as a felon).[3]
 
 
 16
 The government asserts that the only difference between the offenses of conspiracy or aiding and abetting, and the offense of accessory after the fact is the timing of the commission of the "facilitating" offense in relation to the underlying or primary offense. In other words, the government says, the only difference is that one occurs before or simultaneously with the principal offense and the other occurs afterwards. The government is plainly in error: its argument fails to recognize 1) the clear differences in language between the statute governing the offense of accessory after the fact and the statutes governing aiding and abetting and conspiracy, and 2) the fundamental distinctions in the nature of the two types of crimes.
 
 A.
 
 17
 Although the government urges us not to impose a knowledge requirement on accessories that differs from the knowledge requirement for aiders and abettors or conspirators, we cannot ignore the obvious differences in the statutes both with respect to language and the very nature of the offenses. As to the first, the accessory after the fact statute contains an express knowledge requirement that is independent of and separate from the knowledge requirement for the primary offense. By contrast, the statutes governing conspiracy and aiding and abetting impose no knowledge requirement apart from the mens rea requirement for the underlying offense. Compare 18 U.S.C. § 3 [accessory after the fact] ("Whoever, knowing that an offense against the United States has been committed, receives, relieves, comforts, or assists the offender in order to hinder or prevent his apprehension, trial or punishment, is an accessory after the fact.") (emphasis added), with 18 U.S.C. § 2(a) [aider and abettor] ("Whoever commits an offense against the United States or aids, abets, counsels, commands, induces or procures its commission, is punishable as a principal."), and 18 U.S.C. § 371 [conspiracy] (making it an offense for "two or more persons [to] conspire either to commit any offense against the United States, or to defraud the United States").
 
 
 18
 United States v. Feola, 420 U.S. 671, 95 S.Ct. 1255, 43 L.Ed.2d 541 (1975), illustrates the significance of this distinction. In Feola, the Supreme Court determined that the federal conspiracy statute imposed no greater knowledge requirement on the conspirator than the knowledge requirement for the principal.[4] In arriving at its conclusion, the Court relied first and foremost on the fact that "there is nothing on the face of the conspiracy statute that would seem to require that those agreeing to the assault have a greater degree of knowledge" than one convicted under the substantive statute. Id. at 687, 95 S.Ct. at 1265. Given the lack of statutory support to the contrary, and the dearth of case law suggesting otherwise, the Court determined that there was no basis for imposing a different degree of knowledge on the conspirator.
 
 
 19
 As with the federal conspiracy statute, the federal statute governing aiders and abettors contains no knowledge requirement on the part of aiders and abettors independent of or in addition to that required in the underlying statute for the principal, and in fact treats the aider and abettor, like the conspirator, as a principal in all respects. Accordingly, for purposes of establishing knowledge, no distinction is drawn between the principal actors, the conspirators, and the aiders and abettors. By contrast, the accessory statute specifically requires that an accessory know that an offense against the United States has been committed, and thus imposes a knowledge requirement that is independent of and in addition to that required to establish guilt on the part of the offender who committed the primary offense.
 
 
 20
 Indeed, as we have previously recognized, a defendant who is accused of being an accessory after the fact must be shown to have had actual knowledge of each element of the underlying offense. See United States v. Burnette, 698 F.2d 1038, 1052 (9th Cir.1983). In Burnette, we upheld the conviction of an accessory after the fact on the ground that "the jury was clearly instructed that [the defendant] must have had actual knowledge of each element of [the armed bank robbery statute], including knowledge of the use of a gun, in order to be guilty as an accessory after the fact to armed bank robbery."
 
 B.
 
 21
 Equally important, there is a critical difference between the nature of the crime of being an accessory after the fact and the nature of the crime of being either an aider and abettor or a conspirator. One who acts as an accessory after the fact does not participate in the commission of the primary offense. Instead, an accessory is one who provides assistance to the offender by helping him to avoid apprehension or prosecution after he has already committed an offense. Accordingly, an accessory does not incur liability as a principal. See United States v. Innie, 7 F.3d 840, 851 (9th Cir.1993) (underscoring the fact that "an accessory after the fact is not liable as a principal"). For this reason, the offense of accessory after the fact is considered a far less serious offense than the primary offense, and the accessory, who has not played a role in the actual commission of an offense, is considered far less culpable than one who has participated in the commission of the offense. In fact, the accessory after the fact statute specifically limits the punishment for that offense to no more than half of the punishment prescribed for the primary offense. 18 U.S.C. § 3; see also U.S.S.G. § 2X3.1 (establishing the offense level for the crime of accessory after the fact).
 
 
 22
 The contrary is true with respect to both the conspiracy and aiding and abetting offenses, which derive their elements solely from the underlying offense, impose liability on the conspirator and aider and abettor as though they were principals, and provide for the same punishment for conspirators and aiders and abettors as for principals. Further, while it makes sense to impose the same mens rea requirements on conspirators and aiders and abettors as on the principal actors because they are all participating in the commission of the same offense, such logic is not applicable to an accessory after the fact, who is committing a completely different crime that occurs following the commission of the primary offense. The crime of accessory commences after the primary crime has been committed and it consists of "receiv[ing], reliev[ing], comfort[ing] or assist[ing] the offender in order to hinder or prevent his apprehension, trial or punishment." 18 U.S.C. § 3.
 
 
 23
 When considering the accessory after the fact statute, we simply cannot rely on the law that has developed around either aiding and abetting or conspiracy. Instead, we must construe that statute on its own, in light of general principles of statutory construction and, more important, in light of its particular language. A natural reading of the language--"knowing that an offense against the United States has been committed"--inevitably leads to the conclusion that, at the very least, an accessory after the fact must be aware of conduct on the part of the offender that satisfies the essential elements of a particular offense against the United States.[5]
 
 II.
 
 24
 Having decided that the accessory after the fact statute requires the government to establish that the defendant was aware of the facts that constitute the essential elements of the offender's crime, we turn to the question whether the government met its burden with respect to Graves.
 
 
 25
 Moving on from its fallacious basic argument that it need merely prove knowledge of possession of a weapon and nothing more (the level of knowledge required for the felon-offender and the aider and abettor), the government argues that Graves could be convicted if he knew that Prince possessed the gun "unlawfully." Aside from the fact that Graves was neither charged with nor prosecuted for being an accessory to an offender guilty of "unlawful possession," the offender must have committed an offense against the United States, and unlawful possession is not such an offense. In fact, many unlawful possession offenses are state-law, not federal-law, crimes. See, e.g., Cal.Penal Code § 626.9(b) (possession of a firearm in a gun-free school zone); § 12028(a) (carrying a concealed firearm); § 12031(a)(1) (carrying a loaded firearm in public); § 12031(a)(2)(G) ("A person who takes a firearm without the permission of the owner or without the permission of the person who has custody of the firearm does not have lawful possession of the firearm."). Thus, proving "unlawful" possession would not prove a federal offense to which Graves could have been an accessory after the fact.
 
 
 26
 The evidence at trial did not, of course, support a finding that Graves knew Prince was a felon in possession. The only evidence that suggested that Graves knew Prince's possession was even "unlawful" was the fact that Graves had disposed of the gun in the trash can and that he tried to help Prince escape. Because Graves had observed Prince brandishing the gun at the party, an obviously unlawful act, and knew that Prince had been arrested for that conduct, the only reasonable inference is that Graves acted in order to help Prince avoid prosecution for the offense he witnessed. As noted earlier, the judge specifically told the jury that they did not need to find that Graves knew of Prince's prior felony and that they could convict him as an accessory after the fact as long as they found he knew Prince possessed the gun "unlawfully." Most important of all, however, there is absolutely no evidence that Graves knew Prince was a felon, and the government did not try to establish such knowledge on his part.
 
 
 27
 In sum, the government failed to present any evidence to support a finding that Graves acted "knowing that an offense against the United States ha[d] been committed," and consequently failed to prove beyond a reasonable doubt the essential elements of the offense of being an accessory after the fact. Accordingly, Graves's conviction must be reversed for insufficiency of the evidence.[6]
 
 Conclusion
 
 28
 Because the government introduced no evidence from which the jury could reasonably have inferred that Graves knew of Prince's prior felony, there was insufficient evidence to support Graves's conviction of being an accessory after the fact to the offense of felon in possession of a firearm. We reverse Graves's conviction on this count and remand to the district court for a recalculation of the proper sentence as to the aiding and abetting count.[7]
 
 
 29
 REVERSED and REMANDED.
 
 
 30
 MANDATE SHALL ISSUE FORTHWITH.
 
 
 
 [1]
 Shawn Prince, "the offender" for purposes of this opinion, appealed his own conviction on two counts. We dispose of his appeal in a separate unpublished disposition
 
 
 [2]
 There are several other firearms-related crimes that are made federal offenses in § 922(g) in addition to felon in possession. The government has not argued that it proved, sought to prove, or could, under the indictment, have sought to prove that Prince committed any firearm offense other than felon in possession. The government argues only that it proved what it needed to prove in order to sustain a conviction on the charge of accessory after the fact to the crime of felon in possession, notwithstanding the absence of any evidence that Graves knew of Prince's felon status
 
 
 [3]
 Although we acknowledge that Canon decided the question whether an aider and abettor is required to know of the principal's status as a felon, we have serious reservations regarding the soundness of that determination. In particular, we note that the decision contains no analysis in support of its conclusion, but rather in one conclusory sentence simply points to United States v. Sherbondy, 865 F.2d 996 (9th Cir.1988) as authority. Sherbondy, however, was strictly concerned with whether the principal must have knowledge of the jurisdictional element of § 922(g)
 Nevertheless, Canon is consistent with the general rule that the knowledge of an aider and abettor need be no greater than the knowledge of the principal. See discussion infra Part I(A). And our failure in Canon to make what would appear to be a logical exception in a case in which a principal is presumed to have knowledge of his own status but there is no reason an aider and abettor should be presumed to have such knowledge, does not relieve us of the obligation to follow its dictates.
 
 
 [4]
 At the time the Supreme Court decided Feola, title 18 U.S.C. § 371 provided:
 If two or more persons conspire either to commit any offense against the United States, or to defraud the United States, or any agency thereof in any manner or for any purpose, and one or more of such persons do any act to effect the object of the conspiracy, each shall be fined not more than $10,000 or imprisoned not more than five years, or both.
 Although the statute has since been amended, it remains substantively unchanged.
 
 
 [5]
 We also reject the government's argument that Prince's status as a felon is akin to a "jurisdictional requirement," and that as such, it need not be within the defendant's knowledge. See United States v. Felix-Gutierrez, 940 F.2d 1200, 1207 (9th Cir.1991); see also United States v. Feola, 420 U.S. 671, 95 S.Ct. 1255, 43 L.Ed.2d 541 (1975). Factual elements that only confer federal jurisdiction are distinct from other essential elements of the offense, even if such elements also affect whether an offense is considered a state or federal crime. See id. at 676 n. 9, 95 S.Ct. at 1260 n. 9
 
 
 [6]
 We note that the jury instruction given on the accessory after the fact charge was clearly erroneous, as was the district court's response to the jury's mid-deliberation question on this issue. Either of these errors would constitute a ground for reversal of Graves's conviction. Because we reverse on the ground of insufficient evidence, we need not reach those issues
 
 
 [7]
 Graves is currently serving a sentence of 27 months based on his convictions on the aiding and abetting and accessory after the fact counts. Absent the conviction on the accessory after the fact count, he is eligible for immediate release under the applicable sentencing range in the guidelines. Moreover, in light of our decision, he will not be subject to retrial