**NONPRECEDENTIAL DISPOSITION**
To be cited only in accordance with
Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Argued October 30, 2007
Decided February 3, 2009

**Before**

DANIEL A. MANION, *Circuit Judge*

ILANA DIAMOND ROVNER, *Circuit Judge*

DIANE S. SYKES, *Circuit Judge*

Nos. 06-4422 & 07-1093

| | |
|---|---|
| UNITED STATES OF AMERICA, | Appeals from the United States |
| *Plaintiff-Appellee*, | District Court for the Northern |
| | District of Indiana, South Bend |
| *v.* | Division. |
| ORMA D. VANSCHOYCK, | No. 3:06cr0031AS |
| and GORDON M. BROWNLEE, | |
| *Defendants-Appellants*. | Allen Sharp, |
| | *Judge.* |

**O R D E R**

Gordon Brownlee was convicted of possessing with intent to distribute more than 1000 plants of marijuana. *See* 18 U.S.C. § 2; 21 U.S.C. § 841(a)(1). His girlfriend, Orma Vanschoyck, was convicted of being an accessory after the fact to a federal offense. *See* 18 U.S.C. § 3. Both appeal their convictions, and we affirm.

## Background

Brownlee and Vanschoyck lived in LaPorte County, Indiana, with VanSchoyck's parents and brother. The house, owned by the Brownlee family, was on a 700-acre farm, most of which was leased to and tended by other individuals. Brownlee approached his friend, Patricio Bautista, about growing marijuana on the property. Bautista and three other men planted marijuana seeds, and would return periodically to tend to the plants. Brownlee would drive the men to the field, but he never entered the field and never asked the men what they were doing there.

Indiana State Police conducting aerial surveillance for marijuana fields spotted two plots of marijuana on the Brownlee farm—the largest ever found in Indiana—about a mile from the house. The plot was separated from the house by the Little Kankakee River, a wooded area, and plots of corn and soybeans six feet high. Officers visited the scene in person, discovered fertilizer, hand-sprayers and machetes, and set up an electronic surveillance system.

On August 16, 2005, alerted by the surveillance system, Indiana troopers visited the plot and found three men, including Efren Lopez-Mariscal, working there. The men fled through the woods and fields and managed to evade the police.

Two Indiana police officers visited the Brownlee house, where Vanschoyck lived. Police told Vanschoyck that they had discovered marijuana being grown nearby and were searching for several men who had fled the scene. One of the officers described the men, as well as the clothes Mariscal had been wearing that day. The officers also advised Vanschoyck that if the men came to the farmhouse, she should not let them in but instead call 911.

Mariscal arrived at the farmhouse later that night. Vanschoyck let him into the house, allowed him to take a shower and shave, gave him a change of clothes and let him sleep in the house. Mariscal told Vanschoyck that police had found the marijuana plot and that he had managed to evade them. The next morning, as he tried to leave the farmhouse, Mariscal was arrested.

Brownlee was charged with possessing with intent to distribute more than 1000 plants of marijuana. *See* 18 U.S.C. § 2; 21 U.S.C. § 841(a)(1). He was found guilty and sentenced to 120 months' imprisonment.

Vanschoyck was charged as an accessory to a federal offense after the fact for aiding Mariscal. *See* 18 U.S.C. § 3. At her trial, separate from Brownlee's, an Indiana State Police

trooper testified in passing that Bautista, who did not testify against Vanschoyck, had been convicted of possession with intent to distribute in excess of 1000 marijuana plants. Vanschoyck did not object to this testimony. She was convicted and sentenced to 21 months' imprisonment. Brownlee and Vanschoyck both appeal from their convictions.

**Analysis**

I. Brownlee

Brownlee raises one argument on appeal: that the district court's "ostrich" or "deliberate avoidance" instruction was erroneous because, he argues, no facts existed for the jury to conclude he deliberately avoided finding out about the marijuana. Brownlee did not object to the ostrich instruction at trial, so our review is for plain error. *Griffin v. Foley*, 542 F.3d 209, 222 (7th Cir. 2008).

The instruction informs the jury that defendants who suspect they are committing a crime, and deliberately avoid confirming that suspicion, intend to commit the crime in the eyes of the law. *United States v. Black*, 530 F.3d 596, 604 (7th Cir. 2008). The instruction is appropriate where a defendant claims a lack of guilty knowledge and the government has presented sufficient evidence for the jury to conclude that the defendant deliberately avoided learning the truth. *United States v. Carani*, 492 F.3d 867, 873 (7th Cir. 2007).

Brownlee believed there were only two choices for the jury to make: either that he had actual knowledge of the marijuana plot, or that he was innocent. *See United States v. Craig*, 178 F.3d 891, 898 (7th Cir. 1999). The ostrich instruction is inappropriate where the jury is left with such a "binary choice." *Id.; United States v. Giovannetti*, 919 F.3d 1223, 1228 (7th Cir. 1990). Here, though, the jury had more than two choices. At Brownlee's trial, the government presented evidence that Brownlee drove Bautista and other men carrying picks and machetes to the plot multiple times, but never once went into the field himself, and never discussed with the men what they were doing on the land. During his closing argument, Brownlee's attorney told the jury, "don't you think, by the way, that if Gordon Brownlee really knows what's going on back there, at some point he'd have gotten curious enough to go back there and look at this stuff?"

The district court did not plainly err in issuing the ostrich instruction in Brownlee's trial. In fact, Brownlee's attorney's comments seemed to invite the instruction by arguing that Brownlee would have been too curious to stay away if he had known what the men were growing on the plot. And the government presented sufficient facts to support a finding of deliberate avoidance—namely, Brownlee's apparent lack of curiosity about what several men from Chicago were doing on his property with machetes. This "avoidance of

confirmation of one's suspicions"—both physical and psychological—is the equivalent of knowing that the land was being used to grow marijuana. *Black*, 530 F.3d 596, 604 (7th Cir. 2008) (suggesting that knowledge of wrongdoing can be inferred where "you *think* you've rented your house to a drug gang, but to avoid confirming your supposition you make sure not to drive near the house, where you might observe signs of drug activity.")  The district court did not plainly err in issuing the ostrich instruction.

## II. Vanschoyck

Vanschoyck first argues that there was insufficient evidence as a matter of law to convict her as an accessory because, she argues, she did not know about the underlying crime.  She argues specifically that she did not know how many plants were in the field, and that her lack of specific knowledge precluded a conviction for being an accessory after the fact.  That argument is without merit, because whether Vanschoyck knew how many plants there were is irrelevant.

Because Vanschoyck challenges the sufficiency of the evidence, we consider whether the evidence, viewed in the light most favorable to the prosecution, is sufficient for a rational trier of fact to have found the essential elements of the crime beyond a reasonable doubt.  *United States v. Brandt*, 546 F.3d 912, 915 (7th Cir. 2008).  One is an accessory after the fact when one, "knowing that an offense against the United States has been committed, receives, relieves, comforts or assists the offender in order to hinder or prevent his apprehension, trial, or punishment." 18 U.S.C. § 3.  The defendant merely needs to know about the conduct underlying the crime, not that the conduct itself constituted a crime against the United States. *See United States v. Graves*, 143 F.3d 1185, 1186 (9th Cir. 1998); *United States v. Osborn*, 120 F.3d 59, 62-73 (7th Cir. 1997).

The jury could reasonably have concluded that Vanschoyck committed the essential elements of the crime.  Police testified that they informed Vanschoyck that they were looking for several men who had been growing marijuana and described Mariscal. Mariscal testified that after knocking on Vanschoyck's door, he informed Vanschoyck that the police had found the marijuana plot, and that Vanschoyck then provided him a shower, shaving supplies, and a change of clothes.

Vanschoyck bases her argument around her claim that she did not know there were more than 1000 marijuana plants on the property.  But whether she knew the drug quantity is immaterial.  She was convicted of aiding Mariscal.  Mariscal violated 21 U.S.C. § 841(a)(1), and that statute requires only that a defendant knowingly or intentionally manufacture or possess with intent to distribute a controlled substance; the quantity of drugs is not an element of the offense. *See United States v. Martinez*, 301 F.3d 860, 865 (7th

Cir. 2002). In other words, Mariscal himself did not need to know how many plants there were, so Vanschoyck did not need to know how many plants there were to be convicted as an accessory after the fact. *See United States v. Girardi*, 62 F.3d 943, 946 (7th Cir. 1995) (accessories need not know drug quantities for sentencing purposes).

Vanschoyck also argues that the district court erred because the court admitted testimony about a nontestifying codefendant's conviction. Specifically, a police officer testified that Patricio Bautista had been convicted of possession with intent to distribute more than 1000 marijuana plants. Prosecutors generally may not mention that a nontestifying codefendant has been convicted. *United States v. Ofray-Campos*, 534 F.3d 1, 23 (1st Cir. 2008); *United States v. Carraway*, 108 F.3d 745, 755-56 (7th Cir. 1997). Vanschoyck did not object at trial, so we review for plain error. *See United States v. DeSilva*, 505 F.3d 711, 717-18 (7th Cir. 2007).

It was not plain error to mention Bautista's conviction. Vanschoyck argues that Bautista's conviction for possession of more than 1000 plants implied to the jury that Vanschoyck herself knew there were more than 1000 plants. As we have already discussed, whether Vanschoyck knew the drug quantity was immaterial. Furthermore, Bautista and Johnson were charged with separate crimes; he of possession, she as an accessory, so the potential for prejudice was minimal. Vanschoyck was not charged with aiding Bautista, she was charged with aiding Mariscal.

Even if the court had erred in admitting the testimony of Bautista's conviction, that error would have been harmless because the evidence of Vanschoyck's guilt was overwhelming. *See United States v. Curry*, 538 F.3d 718, 728 n.2 (7th Cir. 2008); *United States v. Johnson*, 26 F.3d 669, 679 (7th Cir. 1994). Police testified that they told Vanschoyck that they were looking for fugitives from a nearby marijuana field and described Mariscal down to the clothes he was wearing and that he would be wet from running through the brush. Mariscal testified that he told Vanschoyck he was one of the fugitives and was running from the police. Vanschoyck nonetheless aided him and he was arrested leaving her home.

## Conclusion

Brownlee and Vanschoyck have not presented any compelling argument that the district court plainly erred, or that there was insufficient evidence to convict Vanschoyck as an accessory. Accordingly, the judgments of the district court are

AFFIRMED.