NOT FOR PUBLICATION

**FILED**

UNITED STATES COURT OF APPEALS

DEC 21 2021

FOR THE NINTH CIRCUIT

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

| | |
|---|---|
| UNITED STATES OF AMERICA, | No.   20-10263 |
| *Plaintiff-Appellee,* | D.C. No. 3:13-cr-00764-WHO-4 |
| v. | |
| LUPE MERCADO, | MEMORANDUM* |
| *Defendant-Appellant.* | |

Appeal from the United States District Court
for the Northern District of California
William H. Orrick, District Judge, Presiding

Argued and Submitted November 17, 2021
San Francisco, California

Before:  WATFORD and FRIEDLAND, Circuit Judges, and KORMAN,** District
Judge.

When Lupe Mercado and her husband Barry Gilton discovered that their 17-

year-old daughter Leticia Gilton was having difficulties at school, they let her

move from San Francisco to Los Angeles to live with her cousin Antonio Gilton

---

*       This disposition is not appropriate for publication and is not precedent
except as provided by Ninth Circuit Rule 36-3.

**       The Honorable Edward R. Korman, United States District Judge for
the Eastern District of New York, sitting by designation.

and his family. The plan was for her to study for her high school proficiency exam while working. But then Leticia met Calvin Sneed.

Under the guise of a romantic relationship, Sneed convinced Leticia to engage in sex trafficking. Once Mercado discovered the manner in which Sneed was exploiting her daughter, she went to Los Angeles and tried without success to persuade Leticia to leave Sneed. She and her husband Barry then attempted to murder Sneed while he was waiting for Leticia. Only after this attempt was unsuccessful did Mercado and Barry turn to their cousin Antonio and their friend Alfonzo Williams—both members of the Central Divisadero Players gang ("CDP")—and ask them to kill Sneed to stop his exploitation of their daughter. On June 4, 2012, Barry, Antonio, and Williams shot and killed Sneed two blocks away from Barry and Mercado's residence in San Francisco.

The State of California charged Mercado with murder. A month prior to trial, the U.S. Attorney chose to indict Mercado for Sneed's murder. Mercado then spent almost six years in federal custody, before a jury acquitted her of murder in aid of racketeering in violation of the Violent Crimes in Aid of Racketeering Act ("VICAR")—finding Mercado guilty only as an accessory after the fact.[1] Mercado

---

[1] At oral argument, the AUSA was asked to explain why this did not remain a state prosecution, given that the federal indictment converted a simple murder charge into a complicated VICAR case and increased the number of elements that had to be, and ultimately were not, proven. The AUSA responded, "The record is silent as to why the state ultimately dismissed their charges."

appeals the district court's order denying her motion for an acquittal. We reverse.

To be found guilty as an accessory after the fact, a person must "know[] that an offense against the United States has been committed" and "assist[] the offender in order to hinder or prevent his apprehension, trial or punishment." 18 U.S.C. § 3. The prosecution thus had to show that Mercado knowingly assisted one of the three men involved in Sneed's VICAR murder: Barry, Antonio, and Williams. The jury acquitted Barry of VICAR murder, and it was conceded that Mercado's conviction could not rest on any assistance she provided to Barry. Mercado's conviction as an accessory after the fact could not be predicated on any assistance she provided Williams because Mercado's false statements to police did not concern Williams, and the jury could not have reasonably inferred Mercado's involvement in Williams's decision to delete his text messages and erase his call log. Consequently, the only viable ground for Mercado's accessory after the fact conviction was that she assisted Antonio.

To prove that Mercado was an accessory after the fact to Antonio's VICAR murder of Sneed, the prosecution had to establish that Mercado "had actual knowledge of each element of the underlying [VICAR] offense," *United States v. Graves*, 143 F.3d 1185, 1189 (9th Cir. 1998), most significantly that the reason Antonio agreed to murder Sneed was "for the purpose of gaining entrance to or maintaining or increasing position in an enterprise engaged in racketeering

3

activity," 18 U.S.C. § 1959(a). The prosecution thus had to produce sufficient evidence of two states of mind. First, it had to prove beyond a reasonable doubt that Antonio killed Sneed to further his position in CDP—and not just for the obvious reason: because he was asked to do so as a favor to his family. And the prosecution did not merely have to prove beyond a reasonable doubt that Antonio's desire to further his position in CDP was a *conceivable* reason for his participation in Sneed's murder; it had to be a *substantial* reason. *United States v. Banks*, 514 F.3d 959, 969 (9th Cir. 2008). Second, even if Antonio had a VICAR motive to kill Sneed, the prosecution also had to prove beyond a reasonable doubt that Mercado knew of that motive.

The only evidence the prosecution presented of Mercado's alleged knowledge of Antonio's VICAR purpose was Mercado's familial relationship with Antonio, her marriage to a man whose family members were in CDP, and her attendance at a funeral for a CDP member who was killed through gang violence. The connection the prosecution attempted to draw between this evidence and Sneed's murder was far too attenuated for a reasonable factfinder to infer that Mercado knew that Antonio killed Sneed to further his position in CDP. Antonio had moved to Los Angeles, far away from CDP's territory in San Francisco, at least three years before Sneed's murder. And Sneed was not a member of a rival gang; he was a Los Angeles-based pimp who was trafficking Antonio's cousin.

"Murder *while* a gang member is not necessarily a murder *for the purpose* of maintaining or increasing position in a gang." *Banks*, 514 F.3d at 969. Antonio's membership in CDP does not transform a personally motivated murder into a racketeering act, and Mercado's knowledge of Antonio's CDP membership does not permit the inference that Mercado knew Antonio had a VICAR purpose for murdering Sneed.

We refuse to allow "[s]peculation and conjecture [to] take the place of reasonable inferences and evidence." *Juan H. v. Allen*, 408 F.3d 1262, 1279 (9th Cir. 2005). The evidence presented at trial lends itself to one rational interpretation: Mercado believed that Antonio participated in Sneed's murder for the reason she and Barry asked him to—to protect a family member who was being exploited and abused, not to bolster his position in CDP. It was therefore unreasonable for the jury to conclude that Mercado "had actual knowledge" that Antonio killed Sneed to further his position within CDP. *Graves*, 143 F.3d at 1189-90.

For these reasons, we agree with Mercado that the evidence was insufficient to support her conviction for accessory after the fact to VICAR murder. We thus reverse Mercado's conviction, vacate her sentence, and remand with directions to enter judgment of acquittal for Mercado. While we see substantial merit in the argument that the erroneous accessory after the fact jury instruction constituted

prejudicial error, we need not reach this issue.

**REVERSED and REMANDED.**